# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RICK L. KNIGHT,**

    **Plaintiff,**

**v.**

**VIPIN K. SHAH, M.D.,**
**OFFICER WISEMAN,**
**OFFICER WIEDAW,**

    **Defendants.**                                           **Case No. 07-cv-127-DRH**

## <u>MEMORANDUM & ORDER</u>

**HERNDON, Chief Judge:**

### I. <u>Introduction</u>

Before the Court is a Motion to Dismiss (Doc. 10), filed by defendant Vipin K. Shah, M.D. ("Dr. Shah"), to which Plaintiff has responded in opposition (Doc. 14). Plaintiff filed this **42 U.S.C. § 1983** civil rights action against Dr. Shah, along with two other Defendants, for alleged violations of his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment, namely that the three Defendants were deliberately indifferent to his serious medical needs. Dr. Shah believes Plaintiff has failed to plead a claim upon which relief can be granted, asserting that Plaintiff's allegations, at best, demonstrate medical negligence, rather than behavior amounting to a deprivation of Plaintiff's constitutional rights. On the other hand, Plaintiff believes that his allegations, especially under the federal notice-based pleading standards, are sufficient to survive Dr. Shah's Motion to Dismiss.

Because the Court agrees with Plaintiff, the Motion must be denied for the reasons explained in this Order.

## II. Facts

As Dr. Shah moves to dismiss pursuant to **Rule 12(b)(6)**, the Court shall construe Plaintiff's well-pled allegations in his favor. Plaintiff Rick Knight was incarcerated with the Illinois Department of Corrections on a four-year sentence, beginning on December 2, 2004 (Doc. 2, Complaint, ¶ 11). While incarcerated, Plaintiff was housed at the Vandalia Correctional Center in Vandalia, Illinois, starting on January 27, 2005 (*Id.* at ¶ 12). Several months prior to his incarceration, Plaintiff underwent arthroscopic surgery in July 2004, to repair a torn rotator cuff in his right shoulder (*Id.* at ¶ 10). When he arrived at Vandalia Correctional Center, Plaintiff alleges he informed Dr. Shah and the medical staff that he had surgically reconstructed right shoulder after having torn his right rotator cuff (*Id.* at ¶ 13). Dr. Shah was a physician who provided health and medical services to inmates at the Vandalia Correctional Center (*Id.* at ¶ 7). Upon informing Dr. Shah of his medical concerns, Plaintiff alleges Dr. Shah issued him a pass which allowed him to sleep on the bottom bunk of his cell, due to the physical limitations with his right shoulder (*Id.* at ¶ 14). Despite his pre-existing right shoulder problems, Plaintiff alleges that Dr. Shah failed to either place him on "Patient Status" or to restrict the types of labor Plaintiff would be allowed to perform and thus, he re-injured his right shoulder when he was assigned to a labor-intensive work crew (*Id.* at ¶ 15).

While working on an assigned road crew on February 16, 2005, Plaintiff

alleges that he severely re-injured his right shoulder when he was forced by defendants Wiseman and Wiedaw, both Correctional Officers, to throw heavy logs out of the ditch, even after he told them he could not safely perform the task because of his shoulder (*Id.* at ¶¶ 16-17 & 20). Plaintiff claims he was told to do as he was ordered or else he would be sent to "the hole" (administrative segregation) (*Id.* at ¶ 18). Upon returning to the facility, Plaintiff reported to the healthcare unit and was examined the following day by Dr. Shah (*Id.* at ¶¶ 27-28). Although Plaintiff believed he had torn something in his shoulder because he was in considerable pain, he alleges Dr. Shah would not order an MRI, CT scan or an X-ray for Plaintiff's shoulder, nor would he prescribe pain medication, telling Plaintiff that if he wanted painkillers, he would have to purchase them himself from the facility commissary (*Id.* at ¶¶ 30 & 32). Dr. Shah gave Plaintiff ibuprofen only, which, Plaintiff claims, was ineffective (*Id.* at ¶ 34).

After the examination, Plaintiff alleges that he still suffered considerable pain in his shoulder, so he continued to complain to the medical staff almost daily and wrote several grievances (*Id.* at ¶ 31, Ex. 1). Despite his complaints and repeated requests for further treatment and medication, Dr. Shah allegedly refused to refer Plaintiff to see any outside physicians (*Id.*; *see also* Doc. 14, p. 2). Plaintiff claims only after he voiced his complaints to the hospital administrator, Debbie Magnus, was he allowed to see an outside specialist to treat his shoulder pain (Doc. 2, ¶ 35).

Plaintiff was first taken to see Timothy Gray, M.D., in Effingham,

Illinois, who is a surgeon, but not a shoulder specialist (*Id*. at ¶ 36). Dr. Gray recommended Plaintiff undergo physical therapy and also make an appointment for Plaintiff to meet with Frank S. Lee, M.D., who is a shoulder specialist (*Id*. at ¶ 37). On May 6, 2005, Plaintiff again saw Dr. Gray who confirmed from an arthrogram that Plaintiff had torn his rotator cuff (*Id*. at ¶ 38). Nearly three weeks later, Plaintiff met with Dr. Lee, the shoulder specialist, who instructed Plaintiff to continue his physical therapy for another couple of months (*Id*. at ¶ 39). Plaintiff claims that he was supposed to be receiving pain medication to take before his physical therapy sessions, but that Dr. Shah refused to provide him with any (*Id*. at ¶ 41). At one point, Plaintiff alleges that Dr. Shah called him a liar, an alcoholic and a drug addict (*Id*. at ¶ 44).

Plaintiff saw Dr. Lee a second time on June 27, 2005, alleging that the doctor provided him with the necessary paperwork to schedule surgery for his shoulder and also provided him with a prescription for Ultracet, a stronger pain medication (*Id*. at ¶ 46). Plaintiff alleges that he gave this paperwork and prescription to Dr. Shah, but several days later, Dr. Shah claimed to have lost both (*Id*. at ¶¶ 47-48). From the allegations, it appears that Plaintiff was never again treated by Dr. Lee or any other outside physician nor did he have shoulder surgery during the period of his incarceration (*Id*. at ¶ 49).

### III. Discussion

#### A. Legal Standard

##### 1. Rule 12(b)(6)

Previously, when ruling on a motion to dismiss for failure to state a claim pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**, the district court assumed as true all facts well-pled plus the reasonable inferences therefrom and construes them in the light most favorable to the plaintiff. ***Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)** *Dist. 207*, **29 F.3d 1149, 1151 (7th Cir. 1994))**. The question was whether, under those assumptions, the plaintiff would have a right to legal relief. *Id*. This standard was articulated as such:

> [U]nder "simplified notice pleading," . . . the allegations of the complaint should be liberally construed, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

***Lewis v. Local Union No. 100 of Laborers' Int'l Union*, 750 F.2d 1368, 1373 (7th Cir. 1984)(quoting *Conley v. Gibson*, 355 U.S. 41, 46-47 (1957))**.

Earlier this year, the Seventh Circuit reiterated this liberal standard governing notice pleading:

> Rule 8 was adopted in 1938, and *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), stressed that it does not require fact pleading. It is disappointing to see a federal district judge dismiss a complaint for failure to adhere to a fact-pleading model that federal practice abrogated almost 70 years ago. As citations in the preceding paragraphs show, however, this is among many similar dispositions that the Supreme Court and this court have encountered recently and been obliged to reverse.

***Vincent v. City Colleges of Chicago***, **485 F.3d 919, 924 (7th Cir. 2007)(footnote omitted);** *see also* ***Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84***, **133 F.3d 1054, 1057 (7th Cir. 1998)**; ***Kaplan v. Shure Brothers, Inc.***, **153 F.3d 413, 419 (7th Cir. 1998)**.

However, in a subsequent opinion issued on May 21, 2007, the Supreme Court determined that ***Conley's*** famous "no set of facts" phrase "ha[d] earned its retirement." ***Bell Atlantic Corp. v. Twombly***, **___ U.S. ___, 127 S. Ct. 1955, 1969 (May 21, 2007)**. According to the Supreme Court, the threshold pleading requirement of **FEDERAL RULE OF CIVIL PROCEDURE 8** requires a complaint allege "enough facts to state a claim to relief that is *plausible* on its face" in order to survive a **Rule 12(b)(6)** Motion to Dismiss for failure to state a claim for which relief can be granted. ***Id.* at 974 (clarifying that a "heightened fact pleading of specifics" is not required)(emphasis added)**. In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do . . . ." ***Id.* at 1964-65 (alteration in original)(quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))**. The plaintiff must plead factual allegations which show the right to relief exists beyond mere speculation by "rais[ing] a *reasonable expectation* that discovery will reveal evidence" to substantiate the plaintiff's claims. ***Id.* at 1965**. Thus, the Seventh Circuit has interpreted ***Bell*** as imposing a two-tiered requirement for a complaint to survive a Rule 12(b)(6) motion: (1) it "must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which

it rests," and (2) the "allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a 'speculative level.'" ***E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)**(citing *Bell*, ___ U.S. ___, 127 S. Ct. at 1964-65, 1973 n.14)**.

2.      **Deliberate Indifference**

In ***Estelle v. Gamble,* 429 U.S. 97 (1976)**, the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, imposes a duty upon states to provide adequate medical care to incarcerated individuals. ***See id.* at 103; *see also Walker v. Benjamin*, 293 F.3d 1030, 1036-37 (7th Cir. 2002)**. To create a violation by failing to provide medical care, there must be "deliberate indifference" to a substantial risk of harm. ***Sherrod v. Lingle,* 223 F.3d 605, 610 (7th Cir. 2000) (citing *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970)**. This standard erects two high hurdles which every inmate-plaintiff must clear. ***Dunigan v. Winnebago County,* 165 F.3d 587, 590 (7th Cir. 1999)**. The plaintiff must show: 1) the medical condition was objectively serious; and 2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard. ***Sherrod,* 223 F.3d at 610***.

A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." ***Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)**. To show deliberate indifference,

a plaintiff must establish that the jail official "was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health. ***Perkins v. Lawson***, **312 F.3d 872, 875 (7th Cir. 2002)(citing *Wynn v. Southward,* 251 F.3d 588 (7th Cir. 2001))**. The Seventh Circuit has said that deliberate indifference requires a showing of more than mere negligence (or even gross negligence) but less than purposeful infliction of harm. ***Woodward v. Correctional Medical Services of Illinois, Inc.,* 368 F.3d 917, 926 -27 (7th Cir. 2004*)*(citing *Matos ex rel. Matos v. O'Sullivan,* 335 F.3d 553, 557 (7th Cir. 2003); *Perkins,* 312 F.3d at 875)**. Furthermore, an inmate is not entitled to demand specific care, nor is he entitled to the best care available. ***Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997)**.

**B.     Analysis**

Using the two-prong analysis to determine whether Plaintiff has plead a claim against Dr. Shah for deliberate indifference to serious medical needs in violation of the Eighth Amendment, the Court finds the allegations sufficiently state that Plaintiff suffered an objectively serious medical condition – a torn rotator cuff on his right shoulder that had previously been injured. The Court also finds the allegations amply meet the second prong requirement that Dr. Shah acted with deliberate indifference towards Plaintiff. This is not a conclusive finding, but merely the Court's finding when construing the allegations in the light most favorable to Plaintiff, as necessary under **Rule 12(b)(6)**. Defendant asserts that the facts

demonstrate an extensive course of medical treatment for Plaintiff's shoulder and that Plaintiff's allegations amount to nothing more than a worst-case scenario of medical negligence (Doc. 11, pp. 3-5). Although many of the allegations describe behavior which could potentially be deemed medical malpractice, it is the totality of the allegations from which the Court must make its determination of deliberate indifference, as Plaintiff notes. **See Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("[Mu]ltiple acts of negligence . . . may be evidence of the magnitude of the risk created by the defendants' conduct and the knowledge of the risk by the defendants.") (internal citation omitted)**. Further, the deliberate indifference standard does not require Plaintiff to show that he was completely *ignored* by Dr. Shah. **Sherrod, 223 F.3d at 611**.

At the motion to dismiss stage, notice-based pleading requires the allegations to show more than mere speculation that Dr. Shah acted with deliberate indifference to Plaintiff's serious medical needs. The Court finds this threshold pleading level was met. The allegations indicate that Plaintiff only began receiving outside medical treatment once he went over Dr. Shah's head and complained to the hospital administrator, Debbie Magnus. It is true that Dr. Shah provided Plaintiff with some medical care. However, the fact that Plaintiff's outside physicians, Dr. Gray and Dr. Lee, ordered further diagnostic tests, including an MRI, CT scan and X-Ray, recommended physical therapy, prescribed pain medication and ultimately recommended shoulder surgery, whereas Dr. Shah allegedly recommended none of

these measures, raises the allegations above mere speculation that Dr. Shah acted with deliberate indifference.  Also important is Plaintiff's allegation that he informed Dr. Shah upon his arrival at Vandalia that he had shoulder problems and continued pain, which further substantiates the claim that Dr. Shah was "subjectively aware" of Plaintiff's risk.  The fact that Plaintiff was assigned a "bottom-bunk pass" indicates Dr. Shah may have been aware of Plaintiff's physical limitations with his shoulder from the beginning, thereby begging the question of why Plaintiff was allowed on the work crew in the first place without any work restrictions.  Plaintiff's written grievances regarding his shoulder injury and shoulder pain also serve to bolster his allegation of Dr. Shah's deliberate indifference by additionally raising the possibility that he was aware of Plaintiff's risk of a further shoulder injury.  Lastly, the allegation that Dr. Shah called Plaintiff a liar, an alcoholic and a drug addict, coupled with the allegations that Dr. Shah refused to prescribe pain medications to Plaintiff and that he lost Dr. Lee's surgery recommendation and Ultracet prescription, all aid in illustrating the doctor's possible state of mind when treating Plaintiff.

       For these reasons, the Court finds that Plaintiff's allegations more than meet the federal pleading requirements to state a constitutional violation claim against Dr. Shah for deliberate indifference to Plaintiff's serious medical needs, so that the suit survives a **Rule 12(b)(6)** Motion to Dismiss.

### IV. Conclusion

The Motion to Dismiss (Doc. 10), filed by defendant Vipin K. Shah, M.D., is hereby **DENIED**.

**IT IS SO ORDERED**.

Signed this 4th day of February, 2008.

/s/ David R Herndon
**Chief Judge
United States District Court**