IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RICK L. KNIGHT,**

    **Plaintiff,**

v.

**VIPIN K. SHAH, M.D.,
OFFICER WISEMAN,
OFFICER WIEDAW,**

    **Defendants.**                                Case No. 07-cv-127-DRH

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

### I. INTRODUCTION

Before the Court is a Motion for Summary Judgment (Doc. 46), filed by defendants Kenneth Wiseman and Mark Wiedau (hereinafter "Defendants"). Plaintiff has filed an opposing Response (Doc. 54), to which Defendants have replied (Doc. 59). Plaintiff filed this **42 U.S.C. § 1983** civil rights action against Defendants[1] for alleged violations of his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment, namely that they were deliberately indifferent to his serious medical needs. Specifically, Plaintiff asserts that both defendants Wiseman and Wiedau were "endowed with responsibility to provide heath and medical services

---

[1] A third Defendant, Vipin K. Shah, M.D., has filed a separate Motion for Summary Judgment (Doc. 44) and is therefore not a party to the instant Motion.

to persons in custody of Vandalia Correctional Center, and [were] charged with [the] responsibility to ensure that all prisoners under [their] jurisdiction received timely and adequate medical treatment" (Doc. 2 - Complaint, ¶¶ 8-9). In sum, Plaintiff alleges that on February 16, 2005, both Defendants were deliberately indifferent in that they forced him to provide manual labor on the work crew despite knowing he had a prior shoulder injury, ordered him to continue working even though he re-injured his shoulder at the work site, and then delayed taking Plaintiff to get medical treatment, even though he was in extreme pain. Countering, Defendants argue that they had no prior knowledge of Plaintiff's shoulder injury until he told them he had re-injured it and that they did not require him to continue working, but instead, saw that he was transported back to the Health Care Unit as soon as reasonably possible. Thus, Defendants move for summary judgment based on the grounds that there is no question of material fact that Defendants did not act with deliberate indifference and secondly, because they are entitled to qualified immunity. Having considered the Parties' respective arguments and reviewing the evidence on the record, the Court determines that Defendants are entitled to summary judgment.

## II. FACTS

Plaintiff Rick Knight was incarcerated with the Illinois Department of Corrections while serving a four-year sentence (Doc. 2 - Complaint, ¶ 11). While incarcerated, Plaintiff was housed at the Vandalia Correctional Center ("Vandalia") in Vandalia, Illinois, beginning January 27, 2005 through April 2006 (*Id*. at ¶ 12; Doc. 45, p. 2). Several months prior to his incarceration, Plaintiff underwent

arthroscopic surgery in July 2004 to repair a torn rotator cuff in his right shoulder (Doc. 2, ¶ 10). After arriving at Vandalia, Plaintiff was placed on any type of work restriction (Doc. 46 - Undisputed Material Facts, p. 2, ¶ 6).

On February 3, 2005, Plaintiff was assigned to the work camp at Vandalia (*Id*. at ¶ 3). During the time at issue, defendants Wiseman and Wiedau were employed by Vandalia as Correctional Officers (Doc. 2, ¶¶ 8-9). On February 16, 2005, Defendants supervised the work crew to which Plaintiff had been assigned (Doc. 46, p. 3, ¶ 12). Defendants had not supervised Plaintiff on any of his prior work assignments (*Id*. at ¶ 11). The work assignment on February 16, 2005 consisted of general maintenance and clean-up: two inmates operated chainsaws to cut down trees and the remaining inmates on the work crew were responsible for pulling brush to clear the area (*Id*. at ¶ 13; *see also* Doc. 54, Ex. 2, 22:11-20). On February 16, 2005, Plaintiff informed Defendants that he had re-injured his right shoulder while working (Doc. 54, Ex. 2, 44:5-16; *see also* Doc. 46, p. 4, ¶ 18; Doc. 54, p. 4, ¶ 18). Plaintiff was transported from the work site back to the Health Care Unit at Vandalia for medical attention (Doc. 46, p. 4, ¶ 19; Doc. 54, p. 5, ¶ 19). It was later determined that Plaintiff had torn his right shoulder rotator cuff (Doc. 2, ¶ 38; Doc. 54, p. 5, ¶ 20). He no longer participated in work camp assignments after February 16, 2005 due to his re-injury.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**. The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, **192 F.3d 616, 621-22 (7th Cir. 1999)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Ins. Co.*, **200 F.3d 1055, 1057 (7th Cir. 2000);** *Baron v. City of Highland Park*, **195 F.3d 333, 337-38 (7th Cir. 1999)**. In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations as stated in the pleadings. Rather, the nonmovant must show through specific evidence that an issue of fact remains on matters for which the nonmovant bears the burden of proof at trial. *Walker v. Shansky*, **28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276 (citing** *Celotex*, **477 U.S. at 324)**.

No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be

granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). "[P]laintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment." *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997). In other words, summary judgment may not be averted merely by the non-moving party "baldly contesting his adversary's factual allegations," but instead, the Plaintiff must come forth with probative evidence to substantiate the allegations of the complaint. *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997).

**B.   Analysis**

    **1.   Violation of Plaintiff's Eighth & Fourteenth Amendment Rights**

In a civil rights suit such as this, **42 U.S.C. §1983** requires a Plaintiff to show "(1) an action taken under color of law (2) which violates his federal constitutional rights." *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, **924 F.2d 106, 107 (7th Cir. 1991)**. Generally, the Eighth Amendment obligates prison officials, such as correctional officers, to "provide humane conditions of

confinement . . . [to] ensure that inmates receive adequate food, clothing, shelter and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates.'" ***Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Estelle v. Gamble*, 429 U.S. 97 (1976)**. The Eighth Amendment is violated when an official exhibits "deliberate indifference" – when an official "knows of and disregards an excessive risk to inmate health or safety[;] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." ***Farmer*, 511 U.S. at 837.** This standard is subjective, and is the equivalent of recklessness in the criminal law sense. ***Id.*** Whether an inmate's medical need is "serious," on the other hand, is an objective standard. "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." ***Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (internal citation omitted)**.

A correctional officer can also demonstrate deliberate indifference to an inmate's serious medical need when "unnecessary and wanton infliction of pain" is rendered, due to the officer intentionally denying or delaying an inmate's access to medical treatment. ***Estelle*, 429 U.S. at 104**. Because work camp can be considered a condition of confinement, the Eighth Amendment "forbids knowingly compelling an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful." ***Ambrose v. Young*, 474**

**F.3d 1070 (8th Cir. 2007);** *see also* **Powers v. Snyder, 484 F.3d 929 (7th Cir. 2007) (claim for Eighth Amendment violation existed where inmate plaintiff alleged that prison officials forced him work at a job that required walking and lifting, while refusing to allow inmate a walking cane, despite knowing that he suffered from arthritis and bone degeneration in his hip)**.

      a.     **Serious Medical Need**

Defendants believe Plaintiff's claim against them fails on both the objective and subjective components of an Eighth Amendment claim. They argue Plaintiff cannot demonstrate that his medical need was objectively "serious" as of February 16, 2005 – the date he re-injured his right shoulder (Doc. 46, p. 6). First, Defendants note that although Plaintiff underwent an initial physical examination by Dr. Shah, he was not placed on any type of work restriction before being assigned to work camp. Additionally, Defendants state that prior to February 16, 2005, despite having been on previous work assignments while at Vandalia, Plaintiff never requested a work restriction pass nor did he file any written grievances about his work camp assignment. Conversely, Plaintiff believes the facts on the record adequately demonstrate that his medical needs were "serious" as of February 16, 2005. First, Plaintiff notes that Dr. Shah, in his individual Motion for Summary Judgment, did not even contest the assertion that Plaintiff had a serious medical need.

The facts on the record must be construed in favor of the non-movant,

which is Plaintiff. Plaintiff's medical records indicate he had two surgeries on his right shoulder prior to his incarceration. Plaintiff also testified during his deposition that prior to being sent out on the work assignment with Defendants, he told a correctional officer about his right shoulder and that he could not do any heavy lifting. Plaintiff's medical history, combined with the fact that the medical records also show that Plaintiff tore his right rotator cuff on February 16, 2005, creates a question of material fact as to whether his condition was "serious." The fact that Plaintiff was not placed on work restriction prior to February 16, 2005 or that he failed to request such a restriction or file written grievances is not dispositive of this issue.

      **b.**     **Deliberate Indifference**

Defendants continue, arguing that even should Plaintiff prove his medical needs were "serious" as of February 16, 2005 (the date of his re-injury), he cannot prove that Defendants knew that the work assignment posed a substantial risk of serious injury and thereby failed to take measures to prevent harm from occurring (Doc. 46, p. 6). Defendants were not, first of all, responsible for assigning Plaintiff to work camp – this is the responsibility of the Assignment Officer. Because Plaintiff was not placed on work restriction on February 16, 2005, and because he had previously been on several work assignments without incident, Defendants argue there are no facts to show they were even aware of Plaintiff's pre-existing shoulder condition until he informed them that he had re-injured it. Lastly, Defendants assert that Plaintiff testified that he did not suffer any further injury to his shoulder after

it was re-injured.

Plaintiff testified that when he was called out on work assignment the morning of February 16, 2005, he told the correctional officer at the front desk that because of his shoulder injury, he was not supposed to be doing any heavy lifting or throwing (Doc. 54, Ex. 2, 19:9-14). He further claims he was told he could either go to work or go to segregation ("seg" or "the hole") (*Id*. at 19:14-19). Considering the alternative, Plaintiff chose to work (*Id*.). As for Officers Wiseman and Wiedau, Plaintiff testified that they were present when he told the front desk officer about his shoulder injury but that they were not within hearing range of the conversation (*Id*. at 20:16-21). However, Plaintiff testified that Defendants subsequently asked him whether he was going to go to work or to seg (*Id*. at 19:17-19; 20:22-21:1).

When the inmates began their work that morning, under the supervision of defendants Wiseman and Wiedau, Plaintiff testified that he attempted to move some of the lighter logs and tree branches in order to avoid re-injuring his shoulder, but that both Defendants yelled at him to pick up the logs and throw them up from the ditch (*Id*. at 22:11-24:22). Even after he told them he could not throw the logs up, Plaintiff testified that the Defendants continued yelling at him to throw the logs, so finally he grabbed hold of a log and threw it (*Id*. at 24:22-24). Upon throwing the log, Plaintiff testified that he felt a ripping sensation in his right shoulder (*Id*. at 25:1).

Plaintiff testified that he re-injured his right shoulder while on work assignment at approximately 9:00 a.m. on February 16, 2005 (*Id*. at 43:7-10). Upon

feeling something rip, he grabbed his right shoulder and went to let Defendants know he had re-injured his right shoulder (*Id.* at 44:5-16). In response, Plaintiff testified that defendant Wiedau told him to go back down and pick up twigs and pull branches with his one uninjured arm (*Id.* at 44:16-19). Although Plaintiff went back down to the work site, he testified that he could not continue working due to the pain and so he again complained to Defendants that he needed medical attention (*Id.* at 44:20-25). Plaintiff stated that Officer Wiedau told him they could not leave the job site to go back to the Health Care Unit (*Id.* at 44:25-45:1).

Approximately two and a half to three hours later, Plaintiff claims, a van pulled up on the work site to deliver a new chainsaw (one had broken) and so Plaintiff was able to get a ride back to the Health Care Unit (*Id.* at 45:13-46:6). However, Plaintiff also testified that instead of taking him straight back to the Health Care Unit, the van made a stop to drop off a furnace filter and angle iron, prolonging Plaintiff's ride (*Id.* at 47:3-8). Therefore, Plaintiff testified that he did not arrive at the Health Care Unit until about 12:30 or 1:00 p.m. (*Id.* at 48:8-17).

Certain parts of Plaintiff's account of events directly conflict with Defendants' recollection. First, both Defendants have signed affidavits stating that they had no prior knowledge of Plaintiff's shoulder condition until he informed them the morning of February 16, 2005 that he had re-injured it (Doc. 60, Ex. B - signed Wiseman Aff., ¶ 4; Doc. 46, Ex. C - Wiedau Aff., ¶ 4). Both Defendants also aver they did not observe Plaintiff re-injure his shoulder nor did they tell him to continue working after he told them he had re-injured it (*Id.*). Also, defendant Wiseman stated

that on February 16, 2005, he was working on the broken chainsaw by the transport van when Plaintiff and defendant Wiedau came walking up and informed him that Plaintiff had re-injured his shoulder and could not continue working (Doc. 54, Ex. 5, 5:5-10). Defendant Wiseman states he told Plaintiff there was an officer coming in a van to bring out a replacement saw and that Plaintiff could ride back to the Health Care Unit with him (*Id*. at 5:10-11). Defendant Wiseman also stated that he never asked Plaintiff whether he was going to work or go to the hole (*Id*. at 6:9-12). Defendant Wiseman testified recalling Plaintiff reporting his re-injury at approximately 8:15 a.m. that morning and riding back in the van with Officer Smith at around 9:00 a.m. (*Id*. at 5:5-13; 6:15-17). Finally, the Court notes that Plaintiff filed a grievance about being told to continue working when he re-injured his shoulder on February 16, 2005, and about the delay in taking him back from the work site to the Health Care Unit (Doc. 54, Ex. 1, pp. 1-2). However, the grievance committee denied the grievance based on the findings of a Lieutenant Perry, who interviewed the Officers and was unable to substantiate Plaintiff's allegations of staff misconduct (*Id*. at p. 23).

Clearly, there are existing questions of fact – specifically, whether Defendants ordered Plaintiff work while injured and whether Defendants severely delayed Plaintiff's transport from the work site back to the Heath Care Unit. However, these must be questions of *material* fact in order for Plaintiff's claims against Defendants to survive summary judgment.

### i. Ordering Plaintiff to Work When Injured

First, Plaintiff's own deposition testimony states that Defendants were out of hearing range when he told the front desk officer, the morning of February 16, 2005, that he should not be doing any heavy lifting or throwing due to his right shoulder. Therefore, there is no question of fact as to whether Defendants initially forced Plaintiff to work, despite knowledge of his shoulder problems. Instead, Plaintiff's testimony, along with the Defendants' affidavits and defendant Wiseman's testimony, presents no question of fact that Defendants were not initially aware of Plaintiff's shoulder problems until he informed them that he had re-injured his shoulder.

Assuming arguendo, even had Defendants known about Plaintiff's prior shoulder surgeries, this would not raise a question of material fact as to whether they acted with deliberate indifference in making him work on February 16, 2005. The Court must examine the facts at the time of the incident, not with the benefit of hindsight, as Plaintiff would have it. Plaintiff had been assigned to work camp. This assignment was not made by Defendants. Defendants were only in charge of supervising the inmate work assignment. It was their job to ensure every inmate assigned to their work detail on February 16, 2005 was present and working. On that day, Plaintiff was not on a work restriction. Nothing indicated that Plaintiff should not have been working alongside of the other work camp inmates. Even with the knowledge of Plaintiff's medical history – surgery is performed for the purpose

of fixing medical problems. No one, not even Plaintiff, can foresee the future.[2] Certainly then, Defendants cannot be held to a standard of foreseeability when there was not so much as a work restriction in place. To view the facts otherwise would effectively cause correctional officers to respond to the whim of the inmates each time one thought of some reason he should not have to perform a given work assignment.

The Court will next look to whether Plaintiff was ordered to continue working after telling Defendants he had re-injured his right shoulder. Plaintiff testified that after he informed defendant Wiedau of his re-injury, defendant Wiedau instructed him to continue working with his uninjured arm. It appears from Plaintiff's deposition testimony that defendant Wiseman did not order him to continue working – only defendant Wiedau. This aligns with defendant Wiseman's deposition testimony that he was back at the van trying to fix the broken chain saw at that time.

Plaintiff cites two appellate case opinions in support of his argument that prison officials act with deliberate indifference when they knowingly force an inmate to perform work that will worsen or aggravate a physical injury: ***Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977)** and ***Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989)**. In this case, the record indicates defendant Wiseman did not force Plaintiff to perform any work once he was told that Plaintiff re-injured his

---

[2] Unless Plaintiff intended to re-injure his shoulder that day and, in that case, his act of self-imposed injury intervenes.

shoulder. Moreover, the record also indicates that neither Defendant was aware prior to commencing the work assignment on February 16, 2005 that Plaintiff suffered from a prior shoulder injury. Although there remains a question of fact as to whether defendant Wiedau actually ordered Plaintiff to continuing working, it is clear from the record that Plaintiff was not *forced* to continue working. Despite his claims that he was ordered to continue working with his uninjured arm, Plaintiff testified that he did not actually continue working and therefore, he did not suffer further injury to his right shoulder that day (Doc. 54, Ex. 2, 52:13-23). Thus, the question of whether defendant Wiedau actually ordered Plaintiff to continue working does not amount to a question of *material* fact, as the facts show Plaintiff did not actually continue working.

### ii. Transporting Plaintiff Back to the Health Care Unit

Next, the Court looks to the question of fact regarding whether Defendants knowingly prevented Plaintiff from receiving medical treatment for his shoulder or delayed treatment so that it resulted in substantial harm to Plaintiff. The record clearly indicates Plaintiff was taken from the work site back to the Health Care Unit, where he saw a nurse, so the question then becomes whether Defendants deliberately delayed Plaintiff's medical care.

Plaintiff's medical records show that on February 16, 2005, the day he re-injured his right shoulder during his work assignment, he saw the nurse at 10:45 a.m. Therefore, if Plaintiff re-injured his arm anywhere from between 8:15 a.m. to 9:00 a.m., the delay in transporting him from the work site to the Health Care Unit

does not appear to be near as long as Plaintiff claims (he recalled arriving at the Health Care Unit at approximately 12:30p.m. or 1:00 p.m.). "A delay in the provision of medical treatment for painful conditions-even non-life-threatening conditions-can support a deliberate-indifference claim . . . so long as the medical condition is sufficiently serious or painful." **Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)) (internal quotations omitted))**. However, the Seventh Circuit requires that a plaintiff introduce verifying medical evidence into the record to establish the detrimental effect of the delay. ***Id.* (citing *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)) (internal citations omitted);** *see also* ***Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002)***. Here, Plaintiff has failed to submit any verifying medical evidence that any such delay worsened his condition. His medical records show that he ultimately suffered a torn rotator cuff. However, there is no verifying medical evidence that any alleged delay in transporting him back to the Health Care Unit exacerbated his condition.

Plaintiff also offers into evidence Vandalia Correctional Center Institutional Directive No. 501-140, which deals with emergency procedure for off grounds work crews (Doc. 54, Ex. 4). While failure to follow internal prison procedures is not a *per se* constitutional violation, Plaintiff argues that it is circumstantial evidence of Defendant's knowledge that failure to follow set directives could pose a substantial risk of serious harm to Plaintiff.

Section II(E)(6)(g) reads in pertinent part:

   g. Medical Emergency

      1) Serious medical emergency - A serious medical emergency is any situation where the employee deems immediate medical attention for staff or offenders necessary. Examples would be: Broken bones or suspected broken bones, serious cuts, heat exhaustion, fainting, etc.

      2) Non-serious medical emergency - A non-serious medical emergency is any medical situation which does not appear to be life threatening nor is the person experiencing extreme pain or discomfort. Examples would be minor cuts, headaches, backaches, bruises, sprains, etc.

      3) During a medical emergency, the employee considers serious the following steps must be taken:

         a) Stabilize the injured person by using techniques of first aid as trained.

         b) As soon as possible, notify the Shift Commander . . . of:

            1) Known or suspected nature of illness or injury;
            2) Name of person injured . . .;
            3) Assistance required, (vehicle to transport, H.C.U. Nurse and Supervisor, etc.);
            4) If being transported to the nearest medical facility, which one.

         c) If vehicle at work site is used, all offenders and employees will be transported unless another vehicle is available for use. At no time will employees or offenders be left, on site, without transportation. An ambulance may be requested when necessary.

      4) During a medical emergency considered non-serious by the employee, the following steps must be taken:

         a) Ascertain as close as possible, the exact nature of the complaint or illness;

    b) When necessary, use first aid techniques as trained;

    c) Notify the Shift Commander . . . of the illness or injury; and

    d) Name of person ill or injured (if offender, include number);

    e) Request person be picked up by Institution Patrol and taken to Health Care Unit . . . .

(Doc. 54, Ex. 4, p. 7).

Although Defendants did not follow this institutional directive verbatim, the Court finds that regardless of whether they actually assessed Plaintiff's injury as a "serious" or "non-serious" medical emergency, they substantially complied with the Directive. Transportation was obtained for Plaintiff to take him to the Health Care Unit. The record does not show an excessive delay in treatment nor can Plaintiff show verifying medical evidence that such delay caused a detrimental effect. Although Defendants did not attempt to render first aid techniques, they did ultimately see to it that Plaintiff obtained medical treatment (even if Plaintiff did, in fact, have to initially request it himself). Moreover, Defendants clearly were in no position to leave the work site themselves to transport Plaintiff. To do so would have posed a security risk with the inmates remaining at the work site. Their only choice, aside from transporting all the inmates back with Plaintiff (which would have left the work incomplete and would likely have had to constitute a serious emergency), was to radio in for another transport van to pick Plaintiff up, which is what Defendants did. Accordingly, the Court does not find evidence of deliberate indifference in Plaintiff's argument that Defendants failed to comply with Vandalia Institutional

Directive No. 501-140.

### 2. Qualified Immunity

Typically, the doctrine of qualified immunity acts as a protective shield for "government officials against suits arising out of their exercise of discretionary functions 'so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" **Jones v. Wilhelm, 425 F.3d 455, 460 (7th Cir. 2005)(quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987))**. However, officers "who act unreasonably or 'who knowingly violate the law'" are not entitled to use qualified immunity as a defense. **Sornberger v. City of Knoxville, Ill., 434 F.3d 1006, 1014 (7th Cir. 2006)(quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991))**. Immunity questions should be resolved at the earliest possible stage of litigation, the threshold inquiry being whether the facts of the case, when viewed in the light most favorable to the Plaintiff, show that the Officer's conduct violated Plaintiff's constitutional rights. **Saucier v. Katz, 533 U.S. 194, 201 (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991))**. The next step of the inquiry is to ask whether Plaintiff's constitutional rights were clearly established at the time. **Id.**

Because the Court has not found evidence of deliberate indifference to survive summary judgment, Defendants did not violate Plaintiff's constitutional rights. Therefore, the doctrine of qualified immunity also shields Defendants from Plaintiff's claims.

## IV. CONCLUSION

Based on its findings herein, the Court hereby **GRANTS** defendant Wiseman and Wiedau's Motion for Summary Judgment (Doc. 46). As such, summary judgment is hereby entered in favor of defendants Wiseman and Wiedau and against Plaintiff on all Counts of Plaintiff's Complaint against them.

**IT IS SO ORDERED**.

Signed this 26th day of January, 2009.

/s/      *DavidRHerndon*

**Chief Judge**
**United States District Court**